**THE LAW OFFICE OF JONATHAN M. KASHANI, P.L.C.**
Jonathan M. Kashani, Esq., State Bar No. 266610
jonathan@kashlegal.com
Daryl Glenn Crouse, Esq., State Bar No. 296385
daryl.crouse@kashlegal.com
Kash Legal Building
2839 South Robertson Boulevard
Los Angeles, California 90034
Telephone: (310) 272-7157
Facsimile: (310) 272-7746
litigationteam@kashlegal.com

Attorneys for Plaintiff,
Jimmy Yarbrough,

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT – EASTERN DIVISION

| | |
|---|---|
| Jimmy Yarbrough,<br><br>  Plaintiff,<br><br>  vs.<br><br>County of San Bernadino, et al.<br><br>  Defendant. | CASE NO.: 5:24-cv-00319-KK-DTB<br><br>THIRD AMENDED COMPLAINT |

## I.  INTRODUCTION

1. This is a civil rights action seeking compensatory and punitive damages from Defendants San Bernardino County, City of Hesperia, City of Victorville, Town of Apple Valley (collectively, "Municipal and County Defendants") and Does 1-40 for violations of Plaintiff's Fourth and Fourteenth Amendment rights.

2. Plaintiff, an African-American man, was subjected to excessive force, unlawful detention, and unreasonable seizure by officers and deputies employed by the Municipal and County Defendants during a traffic stop on November 12, 2022. The officers and deputies used violent and unnecessary force against Plaintiff, causing him serious physical injuries, and unlawfully detained and arrested him without probable cause or reasonable suspicion.

3. Plaintiff alleges that the officers and deputies targeted him for this treatment on the basis

of his race, in violation of his right to equal protection under the Fourteenth Amendment. He further alleges that the Municipal and County Defendants are liable for these constitutional violations due to their unconstitutional policies, practices, and customs, their failure to adequately train officers on the use of force and de-escalation techniques, and their ratification of the officers' and deputies' unconstitutional conduct.

4.      Since the November 12, 2022 incident, the officers and deputies involved have engaged in a pattern of harassment and intimidation against Plaintiff, appearing at his home, conducting unjustified stops and investigations of Plaintiff and his associated businesses, and following Plaintiff to various locations without reason.

5.      Plaintiff brings this action to vindicate his constitutional rights, hold Defendants accountable for their unlawful conduct, and obtain compensation for the physical and emotional injuries he has suffered as a result of Defendants' actions.

## II. JURISDICTION AND VENUE

6.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

7.This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and because the Municipal and County Defendants are located in this district.

## III. PARTIES

9.      PLAINTIFF JIMMY YARBROUGH is and was at all relevant times an individual residing in San Bernardino County, California.

10.      Defendant SAN BERNARDINO COUNTY is a political subdivision of the State of California that is within this judicial district.  SAN BERNARDINO COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies,

including the San Bernardino County Sheriff's Department and its agents and employees.

11. At all relevant times, Defendant SAN BERNARDINO COUNTY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the San Bernardino County Sheriff's Department and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, SAN BERNARDINO COUNTY was the employer of Defendants DOES 1-10.

12. Defendants DOES 1-5 (SBCS DEPUTY DOES) are and at all times mentioned herein were deputies with the San Bernardino County Sheriff's Department. At all relevant times, SBCS DEPUTY DOES were acting under color of law within the course and scope of their duties as deputies working for the San Bernardino County Sheriff's Department. At all relevant times, SBCS DEPUTY DOES were acting with the complete authority and subsequent ratification of their principal, SAN BERNARDINO COUNTY.

13. Defendants DOES 6-10, inclusive, are managerial, supervisorial, or policymaking employees of the San Bernardino County Sheriff's Department who were acting under color of law within the course and scope of their duties as supervisorial officers for the San Bernardino County Sheriff's Department. DOES 6-10, inclusive, were acting with the complete authority of their principal, SAN BERNARDINO COUNTY.

14. Defendant CITY OF VICTORVILLE is a political subdivision of the State of California that is within this judicial district. CITY OF VICTORVILLE is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Victorville Police Department and its agents and employees. At all relevant times, Defendant CITY OF VICTORVILLE was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the Victorville Police Department and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, CITY OF VICTORVILLE was the employer of Defendants DOES 11-20.

15. Defendants DOES 11-15 (VPD OFFICER DOES) are and at all times mentioned herein were deputies with the Victorville Police Department. At all relevant times, VPD OFFICER DOES were acting under color of law within the course and scope of their duties as deputies working for

the Victorville Police Department. At all relevant times, VPD OFFICER DOES were acting with the complete authority and subsequent ratification of their principal, CITY OF VICTORVILLE.

16. Defendants DOES 16-20, inclusive, are managerial, supervisorial, or policymaking employees of the Victorville Police Department who were acting under color of law within the course and scope of their duties as supervisorial officers for the Victorville Police Department. DOES 16-20, inclusive, were acting with the complete authority of their principal, CITY OF VICTORVILLE.

17. Defendant CITY OF HESPERIA is a political subdivision of the State of California that is within this judicial district. CITY OF HESPERIA is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Hesperia Police Department and its agents and employees. At all relevant times, Defendant CITY OF HESPERIA was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the Hesperia Police Department and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, CITY OF HESPERIA was the employer of Defendants DOES 21-30.

18. Defendants DOES 21-25 (HPD OFFICER DOES) are and at all times mentioned herein were deputies with the Hesperia Police Department. At all relevant times, HPD OFFICER DOES were acting under color of law within the course and scope of their duties as deputies working for the Hesperia Police Department. At all relevant times, HPD OFFICER DOES were acting with the complete authority and subsequent ratification of their principal, CITY OF HESPERIA.

19. Defendants DOES 26-30, inclusive, are managerial, supervisorial, or policymaking employees of the Hesperia Police Department who were acting under color of law within the course and scope of their duties as supervisorial officers for the Hesperia Police Department. DOES 26-30, inclusive, were acting with the complete authority of their principal, CITY OF HESPERIA.

20. Defendant TOWN OF APPLE VALLEY is a political subdivision of the State of California that is within this judicial district. TOWN OF APPLE VALLEY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Apple Valley Police Department and its agents and employees.

21. At all relevant times, Defendant TOWN OF APPLE VALLEY was responsible

for assuring that actions, omissions, policies, procedures, practices, and customs of the Apple Valley Police Department and its employees and agents complied with the laws of the United States and the State of California. At all relevant times, TOWN OF APPLE VALLEY was the employer of Defendants DOES 31-40.

22. Defendants DOES 31-35 (AVPD OFFICER DOES) are and at all times mentioned herein were deputies with the Apple Valley Police Department. At all relevant times, AVPD OFFICER DOES were acting under color of law within the course and scope of their duties as deputies working for the Apple Valley Police Department. At all relevant times, AVPD OFFICER DOES were acting with the complete authority and subsequent ratification of their principal, TOWN OF APPLE VALLEY.

23. Defendants DOES 36-40, inclusive, are managerial, supervisorial, or policymaking employees of the Apple Valley Police Department who were acting under color of law within the course and scope of their duties as supervisorial officers for the Apple Valley Police Department. DOES 36-40, inclusive, were acting with the complete authority of their principal, TOWN OF APPLE VALLEY.

24. Defendants SAN BERNARDINO COUNTY, CITY OF VICTORVILLE, CITY OF HESPERIA AND TOWN OF APPLE VALLEY and DOES 1-100, inclusive, also caused various injuries and are liable under federal law and under the principles set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978).

25. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants DOES 1 through 100, inclusive, are unknown to PLAINTIFF at this time who therefore sues said Defendants by such fictitious names and when the true names and said capacities of said defendants are ascertained, PLAINTIFF will amend this complaint accordingly. PLAINTIFF is informed and believes and thereon alleges that each of the named Defendants and those designated herein as a DOE is legally responsible and liable in some manner for the events and happenings herein referred to and caused injury and damage proximately thereby to PLAINTIFF as herein alleged.

26. PLAINTIFF is informed and believes, and on that basis alleges, that at all times mentioned herein all Defendants acted under color of law, statute, ordinance, regulations, customs and

usages of the public entity Defendants and the State of California.

27. All Defendants who are natural persons, including DOES 1-40, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives of the SAN BERNARDINO COUNTY, CITY OF VICTORVILLE, CITY OF HESPERIA AND TOWN OF APPLE VALLEY.

28. PLAINTIFF suffered serious bodily injury as a direct and proximate result of the actions of SBCS DEPUTY DOES, VPD OFFICER DOES, HPD OFFICER DOES, and AVPD OFFICER DOES. Defendant SBCS DEPUTY DOES, VPD OFFICER DOES, HPD OFFICER DOES, and AVPD OFFICER DOES are directly liable for PLAINTIFF'S injuries under federal law pursuant to 42 U.S.C. § 1983.

## IV. FACTUAL ALLEGATIONS

### The November 12, 2022 Incident

29. On November 12, 2022, at approximately 3:00 p.m., Plaintiff was driving westbound on Bear Valley Road in Victorville, California, when he noticed a vehicle with activated emergency lights behind him.

30. Plaintiff was not aware of committing any traffic violations and had no outstanding warrants. He was driving within the posted speed limit and had his seatbelt fastened. Believing that the vehicle behind him needed to pass, Plaintiff activated his turn signal and pulled to the right shoulder of the road.

31. The vehicle behind Plaintiff followed him to the shoulder and stopped behind Plaintiff's vehcile. Two officers, Defendants Does 1 and 2, exited the vehicle and approached Plaintiff's vehicle.

32. Without any verbal warning or commands, Defendant Doe 1 forcefully opened the driver's side door of Plaintiff's vehicle and grabbed Plaintiff, who was still restrained by his seatbelt, by the arm. Defendant Doe 1 then violently yanked Plaintiff out of the vehicle, causing the seatbelt to strain against Plaintiff's body and resulting in pain and bruising.

33. Defendant Doe 2 assisted Defendant Doe 1 in pulling Plaintiff from the vehicle and slamming him face-first against the side of the vehicle. Plaintiff's head svehicle the vehicle with

significant force, causing him to experience immediate pain, disorientation, and dizziness.

34. Defendants Does 1 and 2 then twisted Plaintiff's arms behind his back, with Defendant Doe 1 applying extreme and unnecessary pressure to Plaintiff's right arm, causing severe pain in Plaintiff's shoulder and neck. Despite Plaintiff's cries of pain and distress, Defendants Does 1 and 2 continued to apply force to Plaintiff's arms and body, pressing him against the vehicle.

35. At no point during this encounter did Plaintiff resist or attempt to flee from Defendants Does 1 and 2. Plaintiff's hands were empty and visible at all times, and he did not make any sudden or furtive movements. Plaintiff repeatedly asked Defendants Does 1 and 2 why he had been stopped and why they were using such force against him, but received no response.

36. After several minutes of restraining Plaintiff against the side of his vehicle, Defendants Does 1 and 2 handcuffed him and placed him in the back of their patrol vehicle. They did not inform Plaintiff of the reason for his detention or arrest, and did not provide him with Miranda warnings.

37. While Plaintiff was detained in the back of the patrol vehicle, Defendants Does 1 and 2 searched Plaintiff's vehicle without his consent and without probable cause or reasonable suspicion to believe that the vehicle contained evidence of a crime. The officers did not find any contraband or evidence of illegal activity during their search.

38. Plaintiff was detained in the back of the patrol vehicle for approximately 30 minutes while Defendants Does 1 and 2 continued to search his vehicle and speak with each other. During this time, Plaintiff experienced increasing pain in his shoulder, neck, and back, as well as emotional distress and humiliation due to his public detention on the side of a busy road.

39. After approximately 30 minutes, Defendants Does 1 and 2 released Plaintiff from the patrol vehicle and informed him that he was free to go. They did not provide Plaintiff with any explanation for his detention or the use of force against him, and did not offer him medical attention for his injuries.

40. As a result of the incident, Plaintiff suffered physical injuries to his shoulder, neck, back, and extremities, as well as emotional distress, humiliation, and trauma. He required medical treatment for his injuries and continues to experience pain and limited mobility in his affected areas.

**Defendants' Unconstitutional Policies, Practices, and Customs**

41. Upon information and belief, the Municipal and County Defendants have a policy, practice, or custom of using excessive force against African-American individuals, including Plaintiff, in violation of the Fourth Amendment. This policy, practice, or custom includes the use of unreasonable and disproportionate force during traffic stops and other encounters with African-American individuals, as well as the failure to adequately investigate and discipline officers who engage in such misconduct.

42. The Municipal and County Defendants have failed to adequately train their officers and deputies on the use of force and de-escalation techniques, particularly with respect to encounters with African-American individuals. This failure to train amounts to deliberate indifference to the rights of individuals, including Plaintiff, who come into contact with the Municipal and County Defendants' officers and deputies.

43. The Municipal and County Defendants have also ratified the unconstitutional conduct of their officers and deputies, including Defendants Does 1 and 2, by failing to adequately investigate and discipline officers who engage in excessive force and other misconduct against African-American individuals. This ratification has created a culture of impunity within the Municipal and County Defendants' law enforcement agencies, encouraging officers to violate the constitutional rights of African-American individuals without fear of consequence.

44. The Municipal and County Defendants' unconstitutional policies, practices, and customs, as well as their failure to train and supervise their officers and their ratification of officer misconduct, were the moving force behind the violation of Plaintiff's Fourth and Fourteenth Amendment rights on November 12, 2022.

**Post-Incident Harassment and Intimidation**

45. In the weeks and months following the November 12, 2022 incident, Defendants Does 1 and 2, along with other officers and deputies employed by the Municipal and County Defendants, engaged in a pattern of harassment and intimidation against Plaintiff.

46. On multiple occasions, Defendants Does 1 and 2, as well as other officers and deputies, appeared at Plaintiff's home without justification or legal cause. They knocked on Plaintiff's

door and windows, shined flashlights into his home, and demanded that Plaintiff come outside to speak with them. These incidents occurred at various times of day and night, causing Plaintiff significant distress and fear for his safety and privacy.

47. Defendants Does 1 and 2, along with other officers and deputies, also conducted unjustified stops and investigations of Plaintiff and his associated businesses. On at least three separate occasions, officers pulled Plaintiff over while he was driving, claiming that he had committed traffic violations or that his vehicle matched the description of a suspect's vehicle. During these stops, officers searched Plaintiff's vehicle without his consent and detained him for extended periods of time without probable cause or reasonable suspicion.

48. Officers and deputies employed by the Municipal and County Defendants also harassed Plaintiff at his place of business, a small vehicle company that he owns and operates. They appeared at Plaintiff's business on multiple occasions, demanding to search the premises and interrogate Plaintiff's employees. These actions disrupted Plaintiff's business operations and caused him to lose clients and revenue.

49. In addition to these specific incidents, Plaintiff observed officers and deputies following him on numerous occasions as he went about his daily activities. Plaintiff would frequently notice patrol vehicles parked near his home or business, or officers following him as he drove around town. These incidents caused Plaintiff to feel constantly surveilled and targeted by law enforcement, exacerbating his emotional distress and anxiety.

50. Upon information and belief, the post-incident harassment and intimidation of Plaintiff was carried out in retaliation for Plaintiff's complaints about the November 12, 2022 incident and his efforts to hold the officers and Municipal and County Defendants accountable for their misconduct. This retaliation was intended to deter Plaintiff from pursuing his legal rights and to punish him for speaking out against the officers' unlawful actions.

## V. CAUSES OF ACTION

**First Cause of Action: Excessive Force (42 U.S.C. § 1983)**

**Against Individual Doe Defendants**

51. Plaintiff realleges and incorporates by reference the allegations set forth above.

52. Defendants Does 1 and 2 used unreasonable and excessive force against Plaintiff in violation of his Fourth Amendment rights when they violently removed him from his vehicle, slammed him against the side of the vehicle, and twisted his arms behind his back while applying extreme pressure. The force used by Defendants Does 1 and 2 was objectively unreasonable under the circumstances, as Plaintiff was unarmed, restrained by his seatbelt, and not resisting or attempting to flee at the time of the incident.

53. As a direct and proximate result of Defendants Does 1 and 2's use of excessive force, Plaintiff suffered physical injuries, emotional distress, and the violation of his constitutional rights. Plaintiff is entitled to compensatory and punitive damages against Defendants Does 1 and 2.

**Second Cause of Action: Unlawful Detention/Arrest (42 U.S.C. § 1983)**

**Against Individual Doe Defendants**

54. Plaintiff realleges and incorporates by reference the allegations set forth above.

55. Defendants Does 1 and 2 unlawfully detained and arrested Plaintiff without probable cause or reasonable suspicion when they removed him from his vehicle, handcuffed him, and placed him in the back of their patrol vehicle on November 12, 2022. Plaintiff had not committed any traffic violations or crimes, and Defendants Does 1 and 2 did not have any lawful basis for detaining or arresting him.

56. Defendants Does 1 and 2's unlawful detention and arrest of Plaintiff violated his Fourth Amendment right to be free from unreasonable seizures. As a direct and proximate result of this constitutional violation, Plaintiff suffered emotional distress, humiliation, and the loss of his liberty. Plaintiff is entitled to compensatory and punitive damages against Defendants Does 1 and 2.

**Third Cause of Action: Equal Protection Based on Race (42 U.S.C. § 1983)**

**Against Individual Doe Defendants**

57. Plaintiff realleges and incorporates by reference the allegations set forth above.

58. Defendants Does 1 and 2 violated Plaintiff's Fourteenth Amendment right to equal protection under the law by subjecting him to excessive force, unlawful detention, and unreasonable seizure on the basis of his race as an African-American man. Defendants Does 1 and 2's actions toward Plaintiff were motivated by discriminatory purpose and had a discriminatory effect, as they treated

Plaintiff differently and more harshly than they would have treated a similarly situated individual of a different race.

59. The Equal Protection Clause prohibits law enforcement officers from selectively enforcing the law based on considerations such as race. By targeting Plaintiff for excessive force and unlawful detention because of his race, Defendants Does 1 and 2 violated this fundamental constitutional guarantee.

60. As a direct and proximate result of Defendants Does 1 and 2's violation of his equal protection rights, Plaintiff suffered physical injuries, emotional distress, and the discriminatory deprivation of his liberties. Plaintiff is entitled to compensatory and punitive damages against Defendants Does 1 and 2.

**Fourth Cause of Action: Monell - Unconstitutional Policy/Custom (42 U.S.C. § 1983)**

**Against Municipal and County Defendants**

61. Plaintiff realleges and incorporates by reference the allegations set forth above.

62. The Municipal and County Defendants, acting under color of law, maintained policies, practices, or customs that permitted and encouraged their officers and deputies to violate the constitutional rights of African-American individuals like Plaintiff. These unconstitutional policies, practices, or customs included, but were not limited to:

   a. Using unreasonable and excessive force against African-American individuals during traffic stops and other encounters;

   b. Failing to adequately investigate and discipline officers who engaged in excessive force and other misconduct against African-American individuals;

   c. Encouraging a "code of silence" among officers that discouraged the reporting of misconduct and the truthful testifying about incidents involving excessive force and other unconstitutional conduct;

   d. Maintaining a culture of impunity for officers who violated the rights of African-American individuals, thereby encouraging continued unconstitutional conduct.

63. The Municipal and County Defendants' unconstitutional policies, practices, and customs were the moving force behind the violation of Plaintiff's Fourth and Fourteenth Amendment rights on November 12, 2022. Defendants Does 1 and 2 acted pursuant to these unconstitutional policies

when they subjected Plaintiff to excessive force and unlawful detention and arrest.

64. As a direct and proximate result of the Municipal and County Defendants' unconstitutional policies, practices, and customs, Plaintiff suffered physical injuries, emotional distress, and the violation of his constitutional rights. The Municipal and County Defendants are liable for these injuries and violations under the principles established by the Supreme Court in Monell v. Department of Social Services, 436 U.S. 658 (1978).

**Fifth Cause of Action: Monell - Failure to Train (42 U.S.C. § 1983)**

**Against Municipal and County Defendants**

65. Plaintiff realleges and incorporates by reference the allegations set forth above.

66. The Municipal and County Defendants failed to adequately train their officers and deputies on the constitutional limitations on the use of force, the prohibition on racial discrimination in law enforcement, and the need to avoid using excessive force against African-American individuals.

67. The Municipal and County Defendants knew or should have known that their officers and deputies would regularly encounter African-American individuals in the course of their duties, and that there was a history of their officers using excessive force and engaging in other unconstitutional conduct during such encounters. Despite this knowledge, the Municipal and County Defendants failed to provide adequate training to ensure that their officers respected the rights of African-American individuals and used force only when necessary and appropriate.

68. The Municipal and County Defendants' failure to train their officers and deputies amounted to deliberate indifference to the constitutional rights of African-American individuals like Plaintiff. It was obvious that the lack of adequate training on interactions with African-American individuals would result in officers violating the Fourth and Fourteenth Amendment rights of those individuals, as it did with Plaintiff on November 12, 2022.

69. As a direct and proximate result of the Municipal and County Defendants' failure to train their officers, Plaintiff suffered physical injuries, emotional distress, and the violation of his constitutional rights. The Municipal and County Defendants are liable for these injuries and violations under the principles established in Monell.

**Sixth Cause of Action: Monell - Ratification (42 U.S.C. § 1983)**

**Against Municipal and County Defendants**

70. Plaintiff realleges and incorporates by reference the allegations set forth above.

71. Upon information and belief, the Municipal and County Defendants, through their final policymakers, ratified the unconstitutional actions of Defendants Does 1 and 2 with respect to the November 12, 2022 incident. The final policymakers for the Municipal and County Defendants had actual or constructive knowledge of the officers' use of excessive force and unlawful detention and arrest of Plaintiff, but failed to take any meaningful action to investigate or discipline the officers for their misconduct.

72. By failing to properly investigate and discipline Defendants Does 1 and 2 for their unconstitutional conduct, the Municipal and County Defendants' final policymakers approved and ratified the officers' actions, making those actions the official policy of the Municipal and County Defendants. This ratification was the moving force behind the violation of Plaintiff's constitutional rights on November 12, 2022, and behind the continued harassment and intimidation of Plaintiff by officers and deputies in the weeks and months following the incident.

73. As a direct and proximate result of the Municipal and County Defendants' ratification of the officers' unconstitutional conduct, Plaintiff suffered physical injuries, emotional distress, and the violation of his constitutional rights. The Municipal and County Defendants are liable for these injuries and violations under Monell.

**Seventh Cause of Action: False Arrest/Imprisonment**

**Against All Defendants**

74. Plaintiff realleges and incorporates by reference the allegations set forth above.

75. Defendants Does 1 and 2, acting under color of law and within the course and scope of their employment with the Municipal and County Defendants, intentionally confined Plaintiff in the back of their patrol vehicle on November 12, 2022, without lawful privilege and against Plaintiff's consent. Defendants Does 1 and 2 lacked probable cause to arrest or imprison Plaintiff, as he had not committed any crime or traffic violation that would justify his confinement.

76. As a direct and proximate result of Defendants' false arrest and imprisonment, Plaintiff suffered emotional distress, humiliation, and the loss of his liberty. Plaintiff is entitled to

compensatory damages against all Defendants, and punitive damages against Defendants Does 1 and 2, for this tortious conduct.

### Eighth Cause of Action: Battery

### Against All Defendants

77. Plaintiff realleges and incorporates by reference the allegations set forth above.

78. Defendants Does 1 and 2, acting under color of law and within the course and scope of their employment with the Municipal and County Defendants, intentionally subjected Plaintiff to harmful and offensive contact without his consent on November 12, 2022. This harmful and offensive contact included, but was not limited to, forcefully removing Plaintiff from his vehicle, slamming him against the side of his vehicle, and twisting his arms behind his back while applying extreme pressure.

79. The physical contact inflicted by Defendants Does 1 and 2 was excessive and unreasonable under the circumstances, as Plaintiff was unarmed, restrained by his seatbelt, and not resisting or attempting to flee at the time of the incident. Defendants Does 1 and 2 did not have any lawful justification for using such force against Plaintiff.

80. As a direct and proximate result of Defendants Does 1 and 2's battery, Plaintiff suffered physical injuries, emotional distress, and the violation of his right to be free from excessive force. Plaintiff is entitled to compensatory damages against all Defendants, and punitive damages against Defendants Does 1 and 2.

### Ninth Cause of Action: Negligence

### Against All Defendants

81. Plaintiff realleges and incorporates by reference the allegations set forth above.

82. Defendants Does 1-40, acting within the course and scope of their employment with the Municipal and County Defendants, owed Plaintiff a duty to use reasonable care in their interactions with him. This duty included the obligation to use only that degree of force that was objectively reasonable and necessary under the circumstances, and to refrain from detaining or arresting Plaintiff without probable cause or reasonable suspicion.

83. Defendants Does 1-40 breached their duty of care to Plaintiff by using excessive and unreasonable force against him, unlawfully detaining and arresting him, and failing to intervene to

prevent the violation of his constitutional rights on November 12, 2022. The Municipal and County Defendants are vicariously liable for the negligent actions of their employees under the doctrine of respondeat superior.

84. As a direct and proximate result of Defendants' negligence, Plaintiff suffered physical injuries, emotional distress, and economic losses. Plaintiff is entitled to compensatory damages against all Defendants for their breach of the duty of care owed to him.

### Tenth Cause of Action: Violation of California Bane Act (Cal. Civ. Code § 52.1)
### Against All Defendants

85. Plaintiff realleges and incorporates by reference the allegations set forth above.

86. Defendants Does 1 and 2, acting under color of law and within the course and scope of their employment with the Municipal and County Defendants, interfered with Plaintiff's constitutional rights by threats, intimidation, and coercion on November 12, 2022. The threats, intimidation, and coercion included the use of excessive force against Plaintiff, the unlawful detention and arrest of Plaintiff, and the search of Plaintiff's vehicle without probable cause or reasonable suspicion.

87. Defendants Does 1 and 2's actions were intentional and in reckless disregard of Plaintiff's constitutional rights. The Municipal and County Defendants are liable for the violation of the Bane Act by their employees under the doctrine of respondeat superior.

88. As a direct and proximate result of Defendants' violation of the Bane Act, Plaintiff suffered physical injuries, emotional distress, and the interference with his constitutional rights. Plaintiff is entitled to compensatory and statutory damages, as well as attorneys' fees and costs, under Cal. Civ. Code § 52.1(h).

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award compensatory damages against all Defendants in an amount to be proven at trial;
2. Award punitive damages against Defendants Does 1 and 2 in an amount to be determined at trial;
3. Award statutory damages and civil penalties against all Defendants under Cal. Civ. Code § 52.1(h);
4. Award reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and Cal. Civ. Code § 52.1(h);

5. Grant declaratory relief stating that Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments and under state law;

6. Grant injunctive relief enjoining the Municipal and County Defendants from engaging in the unconstitutional policies, practices, and customs described above; and

7. Grant such other and further relief as the Court deems just and proper.

JURY TRIAL DEMANDED

Date: June 7, 2024

**THE LAW OFFICE OF JONATHAN M. KASHANI**

By: _____
Jonathan M. Kashani, Esq.
Daryl Glenn Crouse, , Esq.
*Attorneys for Plaintiff,* Jimmy Yarbrough